UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF QUALCOMM INCORPORATED,<br><br>Applicant,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from Apple, Inc. for Use in Foreign Proceedings. | Case No. 18-mc-80104-VKD<br><br>**ORDER RE EX PARTE APPLICATION FOR AN ORDER AUTHORIZING SUBPOENA PURSUANT TO 28 U.S.C. § 1782**<br><br>Re: Dkt. No. 1 |

Qualcomm Incorporated ("Qualcomm") moves, on an *ex parte* basis, for an order pursuant to 28 U.S.C. § 1782, permitting Qualcomm to subpoena Apple, Inc. ("Apple") in connection with 20 patent infringement lawsuits Qualcomm filed against Apple in the District Courts in Munich and Mannheim, Germany. Dkt. No. 1; Dkt. No. 2, Declaration of Yury Kapgan ("Kapgan Decl.") ¶ 3.

The Court authorizes service of the subpoena on Apple, subject to the reservations described below.

I.  **BACKGROUND**

Qualcomm sells chips used in mobile phones and other devices that run on cellular networks. According to the application, Apple buys Qualcomm's chips from third-party manufacturers for certain iPhone and iPad products. In the German proceedings, Qualcomm claims that Apple's mobile devices, including the iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, and iPhone X, infringe Qualcomm's European patents.[1] According to Qualcomm, Apple

---

[1] The asserted patents include, but are not limited to European Patent Nos. 2,954,737; 2,724,461; 1,199,760; 1,955,529; 3,094,067; 1,956,806; 3,054,658; 3,036,768; 2,460,270; 1,988,602;

asserts noninfringement defenses to Qualcomm's claims, and also asserts counterclaims challenging Qualcomm's alleged anticompetitive licensing practices. Kapgan Decl. ¶ 8. Apple also contends that Qualcomm's infringement claims were asserted to punish Apple for fostering competition and as a means of forcing Apple to obtain chips only from Qualcomm. *Id*.

Qualcomm seeks authorization to subpoena Apple for documents and deposition testimony that Qualcomm says it needs to rebut Apple's noninfringement defenses and antitrust counterclaims.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1782, a district court may order the production of documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47 (2004). The statute may be invoked where (1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." *Id.* at 246.

A district court is not required to grant an application that meets the statutory criteria, but instead retains discretion to determine what discovery, if any, should be permitted. *Intel*, 542 U.S. at 264. In exercising that discretion, the court considers several factors:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";
> 
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
> 
> (3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

---

2,856,808; 2,499,640; and 1,864,151. Kapgan Decl. ¶ 4.

2

(4) whether the discovery requested is "unduly intrusive or burdensome."
*Intel*, 542 U.S. at 264-65.

A district court's discretion is guided by the twin aims of § 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts. *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 84 (2d Cir. 2004). The party seeking discovery need not establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at 247, 261-63.

Applications brought pursuant to 28 U.S.C. § 1782 typically are considered on an *ex parte* basis, since "'parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'" *IPCom GmbH & Co. KG v. Apple, Inc.*, 61 F. Supp.3d 919, 922 (N.D. Cal. 2014) (quoting *In re Republic of Ecuador*, No. C10-80225 MISC CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal., Sept. 15, 2010)). "Consequently, orders granting § 1782 applications typically only provide that discovery is 'authorized,' and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*." *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *2 (N.D. Cal., Mar. 24, 2016).

### III. DISCUSSION

#### A. Statutory Requirements

Qualcomm satisfies the statutory requirements set out in 28 U.S.C. § 1782: First, Apple resides in this district. Kapgan Decl. ¶ 9. Second, Qualcomm seeks discovery for use in proceedings before a foreign tribunal, i.e., the patent infringement suits pending in the District Courts in Munich and Mannheim, Germany. *Id.* ¶¶ 3, 5, 8. Third, there is no question that Qualcomm is an "interested person" within the meaning of 28 U.S.C. § 1782. *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782; we read § 1782's caption to convey no more.").

Simply because the Court has the authority to grant Qualcomm's § 1782 application does not mean that it is required to do so. *Intel*, 542 U.S. at 247. In determining whether judicial assistance under § 1782 is appropriate, the Court must consider the additional *Intel* factors.

### B. *Intel* Factors

#### 1. Participation of Target in the Foreign Proceeding

Although this factor addresses whether the subpoena target is a party to the foreign proceeding, "the key issue is whether the material is obtainable through the foreign proceeding." *In re Varian Med. Sys. Int'l AG*, 2016 WL 1161568 at *3 (internal quotations and citation omitted).

Apple is the defendant in the German proceedings. Thus, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. The question then is whether the German tribunals have the authority to order Apple to produce the evidence sought in the subpoena. *See In re Qualcomm Incorporated*, 162 F. Supp.3d 1029, 1039 (N.D. Cal. 2016).

Here, Qualcomm has made almost no effort to explain why the discovery sought cannot be obtained through the German proceedings. Its counsel says only: "On information and belief, the documents requested in the present Application are in the possession of Apple in the United States and cannot be obtained in the German Proceedings." Kapgan Decl., ¶ 13. Instead, it cites to other cases involving other proceedings in Germany in which other courts have granted an application under § 1782. Dkt. No. 1 at 7 (citing *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011); *Siemens AG v. Western Digital Corp.*, No. 13-cv-01407-CAS (AJWx), 2013 WL 5947973, at *2 (C.D. Cal., Nov. 4, 2013); *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124-HRL, 2009 WL 88348, at *2-3, *5 (N.D. Cal., Jan. 13, 2009).[2]

Qualcomm's weak showing on this factor is mitigated by the fact that Apple, the subpoena target and Qualcomm's adversary in the German proceedings, argues in its *own* § 1782 application

---

[2] In at least two of those cases, the parties submitted declarations regarding foreign procedures and what would be permitted. *Siemens*, 2013 WL 5947973, at *2; *Cryolife*, 2009 WL 88348, at *2.

4

for discovery for use in the *same* German proceedings that this factor should be considered "neutral" when applied to the German tribunals at issue. Dkt. 1, Application at 7:12-14; Kapgan Decl., ¶ 6, Ex. A. In view of Apple's position on this point, and consistent with the findings made by other courts with the benefit of a more complete record, the Court finds that this factor is neutral.

### 2. Receptivity of Foreign Tribunal to U.S. Judicial Assistance

Under this factor, the Court considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "This factor focuses on whether the foreign tribunal is willing to consider the information sought." *In re Varian Med. Sys. Int'l AG*, 2016 WL 1161568 at *4. "'[I]f there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for the district court to order discovery, especially where it involves substantial costs to the parties involved.'" *Id.* (quoting *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008)).

Courts have denied requests for discovery where the foreign tribunal or government expressly says it does not want the U.S. federal court's assistance under § 1782. *See, e.g., Schmitz*, 376 F.3d at 84-85 (affirming the denial of discovery where the German government expressly objected to the information sought due to concerns that it would jeopardize an ongoing German criminal investigation, as well as German sovereign rights); *In re Qualcomm*, 162 F. Supp.3d at 1040-41 (concluding that this *Intel* factor weighed heavily against discovery where the Korean Fair Trade Commission filed an amicus brief stating that it had no need or use for the requested discovery). However, absent "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, courts tend to err on the side of permitting discovery." *In re Varian Med. Sys. Int'l AG*, 2016 WL 1161568 at *4 (internal quotations and citation omitted) (concluding that this factor weighed in favor of discovery because there was "no evidence or case law suggesting that the Mannheim District Court would be unreceptive to the discovery Varian seeks."); *see also e.g., In re Eurasian Natural Resources Corp., Ltd.*, No. 18-mc-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal., Mar. 30, 2018) (concluding that the second *Intel*

factor weighed in favor of discovery because there was "no information that a U.K. court would reject information obtained through Section 1782 discovery."); *In re Google, Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal., Dec. 15, 2014) (concluding that the second *Intel* factor favored discovery where the applicant stated that the Düsseldorf Regional Court in Germany could be expected to be receptive to the information sought in connection with a pending patent infringement matter); *Cryolife, Inc.*, 2009 WL 88348 at *3 (concluding that the second *Intel* factor weighed in favor of discovery where there was "no basis to conclude that the German court would be unreceptive to the information requested by [the applicant].").

Nothing in the record before this Court indicates whether the German tribunals would or would not be receptive to the information Qualcomm seeks in discovery from Apple. However, in the absence of evidence that the tribunals object to this particular information or that they object more generally to the judicial assistance of U.S. federal courts, this Court finds that this factor weighs in favor of authorizing service of the subpoena.

### 3. Circumvention of Proof-Gathering Restrictions

Under this factor, the Court considers whether Qualcomm's request for discovery "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. "'A perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis.'" *In re Varian Med. Sys. Int'l AG*, 2014 WL 1161568 at *5 (quoting *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal., Jan. 17, 2013)). "Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant." *Id*. (citation omitted). Courts have found that this factor weighs in favor of discovery where there is "nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions." *In re Google, Inc.*, 2014 WL 7146994 at *3. *See also In re Eurasian Natural Resources Corp. Ltd.*, 2018 WL 1557167 at *3 (finding that the third *Intel* factor weighed in favor of discovery where there was "no evidence" of an attempt to circumvent foreign proof-gathering restrictions or policies).

Here, Qualcomm states that it "is unaware of any restrictions imposed by German courts

on proof-gathering procedures that would prohibit it from obtaining and introducing in the German Proceedings the discovery it seeks through Section 1782 . . . ." Dkt. No. 1 at 10:6-9. But Qualcomm says nothing about what it has done to obtain the information it seeks from Apple through the German tribunals. As with the first factor, Qualcomm primarily relies on other cases involving other proceedings in other foreign tribunals in which other courts have granted an application under § 1782. *Id.* at 9-10. On this meager showing, the Court finds that this factor is, at best, neutral.

### 4. **Unduly Burdensome or Intrusive Discovery**

Under this factor, the Court considers whether the discovery is sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.

Qualcomm's subpoena includes eleven document requests and three deposition topics. The document requests are:

> Request 1: All Documents and Communications relating to Apple's analysis, consideration, or evaluation of whether any Apple product, device, apparatus, method, process, or system infringes any claim of the European Patents, their U.S. Patent counterparts *(e.g.,* U.S. Patent Nos. 8,698,558, 9,608,675), or any other Related Patent, including, without limitation, all documents and communications concerning any tests of, evaluations of, or expert reports about any Apple product, device, apparatus, method, process, or system conducted by or on behalf of Apple and/or produced by any party in any pending litigation or case between Apple (or its affiliates) and Qualcomm (or its affiliates).

> Request 2: Documents sufficient to show and explain the architecture, design, circuitry and functions of Envelope Trackers Qorvo has developed or is developing for use in the Apple iPhone 7 and 7 Plus, iPhone 8 and 8 Plus, and iPhone X and future versions of Apple Cellular Devices and Apple Non-Cellular Devices, and any baseband chip, power amplifier, or other component with which such Envelope Trackers are used or which control the operation of such Envelope Trackers, including but not limited to schematics, datasheets, design documents, user guides, RTL code, and source code for the Qorvo 81003M Envelope Tracker, Qorvo RF8129 Envelope Tracker, Intel PMB 5750 Multinode RF Transceiver, the Intel PMB 5757 Multinode RF Transceiver, the power amplifier Broadcom/Avago FEM 8050 and the power amplifier Avago FEM 8056.

Request 3: All Documents regarding any Communications or meetings (including but not limited to notes, presentations, analysis, reports, and memoranda) with Intel and/or Qorvo concerning the features and functionalities of RF transceivers or any other related circuitries and components used in RF communications developed by Qualcomm.

Request 4: Documents, Communications or Agreements between Apple and its Contract Manufacturers sufficient to show:

a) That prior to 2016 Apple reimbursed royalties paid by its CMs to Qualcomm under any Subscriber Unit License Agreements (SULAs) of the CMs with Qualcomm, and in or after 2016 decided to not reimburse these royalties and/or indemnify the CMs for any actions to be taken by Qualcomm as a result. *Cf. Qualcomm Inc. v. Apple Inc., No.2 O 128117, Apple's Statement of Defence* (translation) at 12.

b) Apple's knowledge regarding the scope of the SULAs, including any information about Apple's alleged reliance on Apple's assumption that it was fully licensed under Qualcomm's SEP and NEP portfolio via the pass through rights under the Subscriber Unit License Agreements (SULAs). *Cf. Qualcomm Inc. v. Apple Inc., No.2 O 128/17, Apple's Statement of Defence* (translation) at 16 *et seq.*, 48.

Request 5: Apple's cellular SEP and Non-SEP licenses, including but not limited to licenses with Ericsson, Nokia, Interdigital, and Huawei in which Cellular Devices are a licensed product. *Qualcomm, Inc. v. Apple, Inc. No. 2 O 128/17, Apple's Statement of Defence* (translation) at 31.

Request 6: Documents sufficient to show and explain why, from July 2016 onward, Apple made offers to license only Qualcomm's SEPs or Patents disclosed as potentially essential, and the basis for its royalty calculations. *Cf. Qualcomm Inc. v. Apple Inc., No.2 O128/17, Apple's Statement of Defence* (translation) at 32; *Qualcomm Inc. v. Apple Inc., No.2 O 128/17, Apple's Rejoinder* (translation) at 3.

Request 7: Documents and Communications sufficient to show why Apple entered into the following Agreements with Qualcomm: Marketing Incentive Agreement, Strategic Terms Agreement, Transition Agreement, and the First Amendment to Transition Agreement and Business Corporation and

Patent Agreement. *Cf. Qualcomm Inc. v. Apple Inc., No.2 O 128117, Apple's Statement of Defence* (translation) at 12 *et seq.*, 27 *et seq.*

Request 8: Documents and communications concerning Apple's decision to use Baseband Processors from Qualcomm, Intel and any other company, including but not limited to the following:

   a) Requests for proposal or similar processes to solicit information from companies other than Qualcomm concerning the potential procurement or supply of Baseband Processors. *Cf. Qualcomm Inc. v. Apple Inc., No.2 0128117, Apple's Statement of Defence (translation) at 16, 22; Qualcomm Inc. v. Apple Inc., No. 2 0 128117, Apple's Rejoinder* (translation) at 7 et seq., 20 *et seq.*

   b) All Documents concerning comparisons between Qualcomm's Baseband Processors and those of other companies. *Cf. Qualcomm Inc. v. Apple Inc., No.2 0 128/17,* Apple's Statement of Defence (translation) at 16, 22; *Qualcomm Inc. v. Apple Inc.*, No.2 0 128/17, Apple's Rejoinder (translation) at 7 *et seq.*, 20 *et seq.*

   c) Analyses conducted as to the feasibility of changing Baseband Processors and/or suppliers thereof, including but not limited to technical capabilities and specifications, including any changes that could be implemented to design around Qualcomm's asserted patents, and the time and costs required to implement such changes. *Cf. Qualcomm Inc. v. Apple Inc.*, *No.2 0128/17, Apple's Statement of Defence* (translation) at 38; *Qualcomm Inc. v. Apple Inc.*, No. 2 0 128/17, Apple's Rejoinder (translation) at 16, 21-28, 39 *et seq.*

Request 9: Apple's requirements for "premium baseband chipsets," and Communications from any network operators to Apple about the use of "premium baseband chipsets" and the technical characteristics and performance of Apple Cellular Devices. *Cf. Qualcomm Inc. v. Apple Inc., No.2 O 128117, Apple's Statement of Defence* (translation) at 16, 22; *Qualcomm Inc. v. Apple Inc., No.2 O 128117, Apple's Rejoinder* (translation) at 7 et seq., 20 et seq., 29 *et seq.*

Request 10: All submissions to or Communications with government agencies or judicial, administrative or regulatory bodies, including but not limited to the U.S. Federal Trade Commission, the European Commission, the Korean Fair Trade Commission, the Japanese Fair Trade Commission, the Chinese NDRC, or the Taiwanese Fair Trade Commission, concerning Qualcomm.

> *Cf. Qualcomm Inc. v. Apple Inc., No.2 0128117, Apple's Statement of Defence* (translation) at 36 *et seq*.

Request 11: Documents and Communications sufficient to show and explain Apple's role and importance as a buyer of Baseband Processors and related chipsets, including but not limited to any market share analysis and other competitive assessments, as well as any internal Apple Communications as to the existence and use of Apple's market power as a buyer of such chipsets. *Cf. Qualcomm Inc. v. Apple Inc., No.2 0128/17, Apple's Rejoinder* (translation) at 32.

Dkt. No. 1, Ex. 2. In addition, Qualcomm seeks testimony of an Apple representative regarding the following topics:

Topic 1: The subject matter of the Requests for Documents and Things, Nos. 1-11.

Topic 2: The authenticity of Documents and Things produced pursuant to this subpoena.

Topic 3: The process of collecting Documents and Things produced pursuant to the subpoena.

*Id.*

Qualcomm asserts that these requests are "narrowly tailored" and seek relevant information, but it does not explain why that is so. At most, Qualcomm says that the requests "are tied directly to particular allegations Apple has made in its filings in the German Proceedings." Dkt. No. 1 at 11:18-19. It also argues that production could be made with "minimal effort" because counsel believes that Apple has already produced most of the requested documents in a number of U.S. lawsuits between Qualcomm and Apple. Kapgan Decl. ¶ 7. Qualcomm also asserts that Apple is seeking similar discovery from Qualcomm for use in the same German proceedings. Dkt. No. 1 at 11:19-12:2; Kapgan Decl. ¶ 6, Ex. A.

It is difficult for the Court to gauge the relevance of each of these requests. For example, Request 1 appears very broad, and while there may well be some documents within the scope of this request that are relevant to the claims and defenses in the German proceedings, Qualcomm has not explained why it requires production of documents for the full scope of the request. Likewise, with respect to Request 5, Qualcomm provides no explanation for why *Apple's* licenses are relevant to a proceeding challenging Qualcomm's licensing practices. The deposition topics cover

10

an even broader field. They include all subject matter encompassed by the documents requests (Topic 1), and additionally seek testimony about the authenticity of all produced documents (Topic 2) and the process of collecting them (Topic 3).

The cases on which Qualcomm principally relies concern applications seeking discovery that is much narrower and specific than the discovery Qualcomm seeks from Apple. For example, in *In re Ontario Principals' Council*, No. 13-mc-80237-LHK (PSG), 2013 WL 6073517 (N.D. Cal., Nov. 8, 2013), Judge Grewal concluded that the requests were narrowly tailored and that the requested information would assist the foreign tribunal in evaluating the merits of the applicant's defamation claim. *Id*. at *3. However, in that case, the § 1782 applicant simply sought subscriber registration information (e.g., name, address, email address, IP address login information, etc.) for use in a Canadian defamation suit. Qualcomm's requests are much broader.

As a general matter, relevance is a highly fact-specific determination that varies from case to case. So, the conclusions reached by other judges in other cases with dissimilar discovery requests do not help Qualcomm here, especially when the applicants in those other cases either sought substantially narrower discovery or made a more rigorous showing of relevance. *See, e.g., In re Google*, 2014 WL 7146994, at *3; *In re Republic of Ecuador*, 2010 WL 3702427, at *5.

The Court is satisfied that the subpoena includes *some* requests for information relevant to the German proceedings, although it cannot determine without more information which requests, if any, are unduly burdensome or intrusive. This factor weighs in favor of authorizing service of the subpoena, but not without the procedural protections, described below, that the Court affords Apple following service.

**IV.  CONCLUSION**

Qualcomm's application meets the statutory criteria for an order authorizing service of its subpoena for documents and testimony from Apple in aid of patent infringement and antitrust proceedings currently pending before German tribunals. Two of the four factors that inform the Court's discretion are neutral, and the other two factors favor authorizing service.

Accordingly, the Court authorizes service of the subpoena on Apple. However, given the limited nature of Qualcomm's showing on the *Intel* factors, including its failure to explain the

11

relevance of each of its document requests and deposition testimony to the German proceedings, this order does not foreclose a motion to quash or modify the subpoena by Apple following service. If Apple disputes any portion of the discovery sought in the subpoena, compliance with the disputed portion is not required until resolution of the dispute. Disputes requiring resolution must be brought in compliance with the Court's Standing Order for Civil Cases.[3]

**IT IS SO ORDERED.**

Dated: August 13, 2018

VIRGINIA K. DEMARCHI
United States Magistrate Judge

---

[3] https://cand.uscourts.gov/filelibrary/3438/Standing-Order-for-Civil-Cases-July-31-2018.pdf